# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

| | | |
|---|---|---|
| Monyulette Boyd, | § | |
| *Plaintiff*, | § § § | **CIVIL ACTION NO.** _____ |
| v. | § § | |
| 1A SMART START LLC, | § § | **JURY DEMANDED** |
| *Defendant*. | § § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff Monyulette Boyd files this Original Petition against Defendant 1A SMART START LLC ("Smart Start"), and in support states as follows:

### JURISDICTION AND VENUE:

1. Jurisdiction is conferred on this Court by 28 U.S.C. §1331.

2. Venue is proper in this Court under 28 U.S.C. §1441(a). Venue is also proper in this district pursuant to 28 U.S.C. §1391(b)(1) and under 28 U.S.C. §1391(b)(2) because all or substantial part of the events or omission giving rise to the claim occurred in this district.

### PARTIES:

3. Plaintiff Monyulette Boyd is a former employee of the Defendant, and is a resident of Midland County, Texas.

4. Defendant Smart Start is a Texas corporation, headquartered in Texas. It's corporate office is located at 500 E. DALLAS RD., STE. #100 GRAPEVINE, TX 76051. It can be served by and through its registered agent: CORPORATION SERVICE COMPANY DBA CSC - LAWYERS INCO, 211 E. 7TH STREET, SUITE 620 AUSTIN, TX 78701.

## FACTS:

5. Ms. Boyd began working for Defendant in March of 2018.

6. Ms. Boyd is African American.

7. In or around early 2021, Ms. Boyd began to observe a pattern of treatment from her supervisor, Brenda O'Brien (Caucasian) (Director of Operations). This included speaking to Ms. Boyd in a derogatory and demeaning manner in front her peers, which was very different from how she treated Ms. Boyd's non-African American coworkers.

8. Ms. Boyd decided to make a complaint to H.R. about Ms. O'Brien's actions.

9. Before making her complaint to H.R., Ms. Boyd told her prior Smart Start supervisor about her plans to do so. He told her that if she was going to make a complaint, she should get ready to be fired. He warned her that the company would not respond kindly to an allegation of discrimination.

10. On or around March 1, 2021, Ms. Boyd made her complaint of race discrimination to Ginger Gibbs - HR Director. Specifically, she alleged that Ms. O'Brien, was treating her in a demeaning and discriminatory manner, and that she (Ms. Boyd) felt this was because of her race.

11. Ms. Boyd made this complaint because she had a good faith belief that Ms. O'Brien was treating her differently based on her race.

12. Upon information and belief, Ms. O'Brien was made aware of the complaint that Ms. Boyd made against her.

13. At this time, Ms. Boyd was the only African American in a management position.

14. Ginger Gibbs refused to file a formal report about Ms. Boyd's allegations of race discrimination. Instead, she told Ms. Boyd to just talk to Ms. O'Brien about it herself.

15. Ms. Boyd did as instructed, but Ms. O'Brien continued to behave in a demeaning way towards her.

16. Shortly after this meeting, Ms. Boyd had a planned vacation.

17. This vacation had been approved over three months in advance, by Ms. Boyd's previous manager. It was entered into the company's H.R. system (PayCom), and Ms. O'Brien had been informed of the vacation verbally, and in writing. She never asserted any objections to, or concerns with, this planned vacation.

18. Before the vacation began, Ms. O'Brien had Ms. Boyd to ensure that the department was completely in order, and that the staff was prepared for Ms. Boyd to be away.

19. Then, shortly after Ms. Boyd left for her vacation, Ms. O'Brien terminated her employment - only a few weeks after Ms. Boyd made her complaint of race discrimination. Upon information and belief, H.R. approved Ms. Boyd's termination.

20. The alleged reason for Ms. Boyd's termination was that she violated the company's policy on travel during the COVID pandemic. This explanation was false, unworthy of credence, and pretextual, as follows:

- Ms. Boyd followed the policy by taking two Covid Tests prior to travel to Jamaica, and a third test upon her return to the U.S. (all tests were negative);
- Ms. Boyd could and would have quarantined upon her return (she was fired before this could have taken place, because she was fired before she returned from vacation);
- Other employees of different races (and who had not filed complaints against Ms. O'Brien) within Ms. Boyd's same office had traveled domestically and internationally without quarantining or otherwise following company policy - but they were not disciplined or fired for it.

21. In actuality, Ms. Boyd was fired by Ms. O'Brien because of her race, and because she made a protected complaint of discrimination against Ms. O'Brien.

## V.   CAUSES OF ACTION

### COUNT ONE:   RETALIATION
### (42 U.S.C. § 1981) (as amended by the Civil Rights Act of 1991)

22. Plaintiff realleges and incorporates by reference all of the facts set forth in the above sections of this Complaint.

23. 42 U.S.C. § 1981 prohibits race discrimination in the making of and enforcing of contracts. This statute provides that "all persons … shall have the same right in every State and Territory to make and enforce contracts … as is enjoyed by white citizens." This includes contracts of employment.  Ms. Boyd had a contract of employment with Defendant.

24. Defendant subjected Ms. Boyd to disparate treatment in the terms and conditions of employment.

25. Specifically, Smart Start fired Ms. Boyd because she opposed and complained about acts that she, in good faith, believed to be discriminatory.  But for her protected activity, Ms. Boyd would not have been fired when she was.

26. Smart Start terminated Ms. Boyd at the request of Ms. O'Brien for reasons that it knew, or should have known, were because of Ms. Boyd's protected conduct. In doing so, Smart Start acted as the cat's paw of Ms. O'Brien in making the decision to terminate Ms. Boyd's employment.

27. Smart Start's conduct was intentional, deliberate, willful and in a callous disregard for the rights of Ms. Boyd.

28. Plaintiff seeks to recover all damages to which she is entitled, including but not limited to: all lost wages and employee benefits, compensatory damages, punitive damages, pre-judgment interest, and post-judgment interest.

29. Plaintiff requests reinstatement (or adequate front pay in lieu of reinstatement), and any additional equitable or other relief to which she may be entitled.

30. Plaintiff also seeks recovery of her reasonable attorney's fees and court costs.

## COUNT TWO: DISCRIMINATION
### (42 U.S.C. § 1981) (as amended by the Civil Rights Act of 1991)

31. Plaintiff realleges and incorporates by reference all of the facts set forth in the above sections of this Petition.

32. 42 U.S.C. § 1981 prohibits race discrimination in the making of and enforcing of contracts. This statute provides that "all persons … shall have the same right in every State and Territory to make and enforce contracts … as is enjoyed by white citizens." This includes contracts of employment. Ms. Boyd had a contract of employment with Defendant.

33. Defendant subjected Ms. Boyd to disparate treatment in the terms and conditions of employment.

34. Smart Start fired Ms. Boyd because of her race. But for her race, Ms. Boyd would not have been fired when she was.

35. Smart Start terminated Ms. Boyd at the request of Ms. O'Brien for reasons that it knew, or should have known, were because of Ms. Boyd's protected conduct. In doing so, Smart Start acted as the cat's paw of Ms. O'Brien in making the decision to terminate Ms. Boyd's employment.

36. Smart Start's conduct was intentional, deliberate, willful and in a callous disregard for the rights of Ms. Boyd.

37. Through its conduct, Smart Start deprived Ms. Boyd of the same rights as enjoyed by white employees to the creation, performance, enjoyment and all benefits and privileges of employment with Smart Start in violation of 42 U.S.C. § 1981.

38. Plaintiff seeks to recover all damages to which she is entitled, including but not limited to: all lost wages and employee benefits, compensatory damages, punitive damages, pre-judgment interest, and post-judgment interest.

39. Plaintiff requests reinstatement (or adequate front pay in lieu of reinstatement), and any additional equitable or other relief to which she may be entitled.

40. Plaintiff also seeks recovery of her reasonable attorney's fees and court costs.

## VI.  JURY DEMAND

41. Plaintiff requests trial by jury on all claims.

## VII. PRAYER FOR RELIEF

42. Wherefore, Plaintiff requests that on final trial they obtain judgment against Defendant as follows:

   a. Judgment against Defendant for actual damages, including lost wages and benefits (both back pay and front pay), the sum to be determined at time of trial;

   b. Judgment against Defendant for compensatory damages in the maximum amount allowed by law;

   c. Judgment against Defendant for punitive damages in the maximum amount allowed under law;

   d. An order that Defendant take such other and further actions as may be necessary to redress Defendants' violation of the law;

   e. Pre-judgment and post-judgment interest at the maximum amount allowed by law;

   f. Costs of suit, including reasonable attorney's fees; and

   g. The award of such other and further relief, both at law and in equity, to which Plaintiff may be justly entitled.

Respectfully Submitted,

**Tremain Artaza PLLC**

By: /s/ Ashley Tremain
       Ashley E. Tremain
       State Bar No. 24066209

4925 Greenville, Ste. 200
Dallas, Texas 75206
Telephone: (469)-573-0229
Facsimile: (214)-254-4941
ashley@tremainartaza.com

**COUNSEL FOR PLAINTIFF
MONYULETTE BOYD**